UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARY PETSCH,

                              Plaintiff,

              v.

MICHAEL J. ASTRUE, Commissioner of
 Social Security,

                              Defendant.

_____

**REPORT**
**and**
**RECOMMENDATION**

**11-CV-00925(F)**

APPEARANCES:        FESSENDEN, LAUMER AND DEANGELO
                    CHARLES S. DEANGELO, of Counsel
                    Attorney for Plaintiff
                    81 Forest Avenue
                    P.O. Box 590
                    Jamestown, New York 14702-0590

                    WILLIAM J. HOCHUL, JR.
                    UNITED STATES ATTORNEY
                    Attorney for Defendant
                    JANE B. WOLFE
                    Assistant United States Attorney, of Counsel
                    Federal Centre
                    138 Delaware Avenue
                    Buffalo, New York 14202

## JURISDICTION

        This action was referred to the undersigned by Honorable Richard J. Arcara on

January 9, 2012. The matter is presently before the court on Defendant's motion for

judgment on the pleadings filed on April 9, 2012 (Doc. No. 11), and Plaintiff's cross

motion for judgment on the pleadings filed on April 16, 2012 (Doc. No. 13).

## BACKGROUND

        Plaintiff Mary Petsch ("Plaintiff"), seeks review of Defendant's decision denying

her Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Social Security Act ("the Act"). In denying Plaintiff's application for disability benefits, Defendant determined Plaintiff does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 17).[1] Defendant further determined that Plaintiff meets the insured status requirements through December 31, 2012 (R. 16), that Plaintiff has the severe impairment of diabetes mellitus, morbid obesity, and status post carbon monoxide poisoning that does not meet or medically equal a listed impairment under 20 CFR Part 404, Subpt P, Appendix 1 (20 CFR § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926, that Plaintiff has the residual functional capacity to perform medium work (R. 17), and that Plaintiff was not disabled within twelve months of the alleged onset date of disability of May 15, 2008. (R. 20). Defendant further determined that even if the Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's alleged symptoms, their alleged persistence and limiting effects were not credible to the extent inconsistent with Plaintiff's residual functional capacity assessment. (R. 18). As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged onset date through the date of the Administrative Law Judge's decision. *Id.*

## PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits on August 1, 2008 (R. 98), alleging disability based on carbon monoxide poisoning. (R. 117). The applications

---

[1] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

were initially denied by the Defendant on October 22, 2008. (R. 48). Pursuant to

Plaintiff's telephone request on December 3, 2008 (R. 58), a hearing was held before

Administrative Law Judge William E. Straub ("Straub" or "the ALJ") on December 16,

2010, in Buffalo, New York. (R. 25-42). The Plaintiff, represented by Charles DeAngelo,

Esq., ("DeAngelo") appeared and testified via video conference at the hearing. (R. 25-

42). The ALJ's decision denying the claim was rendered on December 23, 2010. (R. 13-

20).

On January 10, 2011, Plaintiff requested review of the ALJ's decision by the

Appeals Council. (R. 9). The ALJ's decision became Defendant's final decision when

the Appeals Council denied Plaintiff's request for review on September 8, 2011. (R. 1-

4). This action followed on November 1, 2011, with Plaintiff essentially alleging the ALJ

erred by failing to find her disabled. (Doc. No. 1).

Defendant's answer, filed January 6, 2012 (Doc. No. 8), was accompanied by

the record of the administrative proceedings. On April 9, 2012, Defendant filed a motion

for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum

of law (Doc. No. 12) ("Defendant's Memorandum"). On April 16, 2012 Plaintiff filed a

cross motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a

memorandum of law (Doc. No. 13) ("Plaintiff's Memorandum"). Oral argument was

deemed unnecessary.

Based on the following, Defendant's motion for judgment on the pleadings

should be GRANTED, Plaintiff's motion for judgment on the pleadings should be

DENIED and the Clerk of the Court should be instructed to close the file.

**FACTS**[2]

Plaintiff, Mary Petsch ("Plaintiff"), was born on July 6, 1956, is not married, has a high school education, lives with her mother, and worked most recently as an assembler from May 1975 until May 2008. (R. 101-18). Plaintiff alleges she suffers from symptoms related to carbon monoxide poisoning from a clogged chimney in her home beginning in 2004 until May 15, 2008, the disability onset date when Plaintiff was fired from her job for poor attendance. (R. 112).

On October 12, 2004, Kalpana D. Patel, M.D. ("Dr. Patel") ordered a blood test on Plaintiff that showed Plaintiff with a higher than normal level of erythrocyte sedimentation rate ("ESR") (red blood cell sedimentation), and elevated C3 serum (associated with insulin resistance). (R. 215). On November 9, 2004, Plaintiff visited Dr. Patel at the Allergy Environmental Care Center in Cheektowaga, New York, who reviewed a urinalysis test on Plaintiff and prescribed vitamin supplements. (R. 190-96).

On July 1, 2005, Plaintiff underwent a colonoscopy test performed by James P. Champion, M.D. ("Dr. Champion") that showed normal results. (R. 210). On November 28, 2005, Plaintiff visited Albert Persia, M.D. ("Dr. Persia"), Plaintiff's family physician, for a follow up of Plaintiff's complaints of fatigue. (R. 218). Dr. Persia noted Plaintiff had missed six weeks of work and referred Plaintiff for a blood test. *Id.* On May 15, 2006 Plaintiff visited Dr. Persia with complaints of fatigue and chronic headache. (R. 221). Dr. Persia diagnosed Plaintiff with controlled hypertension, chronic obesity, and diabetes mellitus (R. 221), and referred Plaintiff to S.C. Bodani, M.D. ("Dr. Bodani"), a

---

[2]Taken from the pleadings and the administrative record.

neurologist, for a consultation. *Id*.

On September 1, 2006, Dr. Bodani completed a computerized tomography scan ("CT scan") on Plaintiff's brain that showed generalized atrophy of the frontal lobes of Plaintiff's brain. (R. 198). Dr. Bodani diagnosed Plaintiff with vascular (related to blood vessel) headaches, hypertension, and history of carbon monoxide poisoning, administered an electroencephalogram test ("EEG") that showed abnormal results (rare sharp waves in Plaintiff's temporal region) (R. 199), which Dr. Bodani opined was consistent with epileptogenic (epilepsy like) lesions, and recommended further follow-up for clinical correlation. *Id*. A magnetic resonance imaging ("MRI") test completed the same day showed mild cortical atrophy of Plaintiff's brain. (R. 203). Dr. Bodani prescribed a multi-vitamin and told Plaintiff to continue use of a carbon monoxide detector and smoke alarm in her home. *Id*.

On September 28, 2006, Plaintiff returned to Dr. Persia with symptoms of headache, tiredness, frequent urination, diarrhea, abdominal discomfort, and tinitis (ringing in ears). (R. 225). A followup visit to Dr. Persia on November 13, 2006 showed Plaintiff feeling better with well controlled diabetes, and stable hypertension. (R. 229).

On March 22, 2007, Plaintiff sought treatment from Dr. Persia for an acute viral infection. (R. 231). A visit to Dr. Persia on August 6, 2007 showed Plaintiff with symptoms of fatigue, general body aches, nausea, and diarrhea. (R. 234).

On January 31, 2008, Dr. Persia noted Plaintiff complained of fatigue, headache, and diarrhea. (R. 237). A follow up visit to Dr. Persia on March 6, 2008 showed Plaintiff "doing well" with no fatigue. (R. 240). Plaintiff sought treatment from Dr. Persia on

March 13, 2008 for a sore throat. (R. 242). On April 1, 2008, Plaintiff visited Dr. Persia requesting a note for Plaintiff's employer to explain Plaintiff's absence from work with symptoms of dizziness, head pressure, fullness of the ear, fatigue, altered bowel movements and malaise. (R. 244).

On June 1, 2008, Frank Arnal, M.D. ("Dr. Arnal") completed a sleep study on Plaintiff that revealed mild sleep apnea. (R. 251).

On September 4, 2008, at the request of the New York State Office of Temporary Disability Assistance, Otolaryngologist Samir M. Geleil, M.D. ("Dr. Geleil") completed a disability report that showed Plaintiff with no limitation to Plaintiff's gait, mental capacity, ability to lift, stand, walk, push or pull. (R. 255-60). A consultative psychiatric examination performed by Thomas Ryan, M.D. (Dr. Ryan") on October 8, 2008, showed Plaintiff with no significant limitation to following and understanding simple directions, performing simple tasks, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks, making adequate decisions, relating with others and dealing with stress, and no psychiatric condition. (R. 264).

On October 8, 2008, at the request of the Social Security Administration ("SSA"), Harbinder Toor, M.D. ("Dr. Toor") completed a consultative internal medical examination on Plaintiff that showed Plaintiff with slight numbness and reddish color of her lower legs and no limitation to Plaintiff's gross and fine motor activity. (R. 268). On October 15, 2008 C. Butensky, a Psychologist, completed a psychiatric review of Plaintiff that was normal. (R. 282).

On October 21, 2008, Disability Examiner P. Didas completed a residual functional capacity assessment on Plaintiff, and assessed Plaintiff with the ability to occasionally lift 50 pounds, frequently lift or carry 25 pounds, frequently, sit, stand and/or walk about 6 hours in an eight hour workday, with unlimited capacity to pull or push, and the ability to engage in medium work. (R. 285).

At the ALJ hearing on December 16, 2010, Plaintiff testified she was fired from her job as an assembly worker for poor attendance, and that she was unable to work because her head was swirling, she was spending time in the bathroom, ached all over, and could not think or see straight. (R. 31). No vocational expert was called to testify.

## DISCUSSION

1. **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . ..  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v.*

*Harris,* 626 F.2d 225, 231 (2nd Cir. 1980).

## A.   Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S.

389, 401 (1971). Substantial evidence requires enough evidence that a reasonable

person would "accept as adequate to support a conclusion." *Consolidated Edison Co.*

*v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

While evaluating a claim, the Commissioner must consider "objective medical

facts, diagnoses or medical opinions based on these facts, subjective evidence of pain

or disability (testified to by the claimant and others), and . . . educational background,

age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983)

(quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating

physician is supported by medically acceptable techniques and results from frequent

examinations, and the opinion supports the administrative record, the treating

physician's opinion will be given controlling weight. *Scherler v. Sullivan*, 3 F.3d 563, 567

(2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is

supported by substantial evidence. *Dumas,* at 1550; 42 U.S.C. §§  405(g) and

1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[3] if

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period of which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[4]  42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

---

[4] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§  404.1509 and 416.909.

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry v. Schweiker, supra*, at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. *Id.* The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry, supra*, at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision.  *Richardson v. Perales*, 402 U.S. 389, 410 (1971).

**B.**    **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. §

404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In this case, the ALJ concluded Plaintiff did not engage in substantial gainful activity since May 15, 2008, the onset date of the alleged disability. (R. 16). That finding is not disputed by Plaintiff.

### C.    Severe Physical or Mental Impairment

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do "basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

In the instant case, the ALJ found Plaintiff's diabetes mellitus, morbid obesity, and status post carbon monoxide poisoning were severe impairments as defined under 20 C.F.R. § 404.1520. (R. 17). That finding is also undisputed by Plaintiff.

### D.    Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough

11

to prevent the claimant from performing any gainful activity and the claimant is

considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d.

45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed

impairments, the claimant is considered disabled"). The relevant listing of impairments

in this case includes 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 9.08 (Diabetes mellitus)

and any cumulative effects of Plaintiff's obesity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

4.00I1.

**Diabetes Mellitus**

Disability under 20 C.F.R. Pt. 404, Subpt. P, App. A § 9.08 ("§ 9.08") requires

> A. Neuropathy demonstrated by significant and persistent disorganization of
> motor function in two extremities resulting in sustained disturbance of gross and
> dexterous movements, or gait and station (see 11.00C); or
> B. Acidosis occurring at least on the average of once every two months
> documented by appropriate blood chemical tests (pH or $PCO_2$ or bicarbonate
> levels); or
> C. Retinitis proliferans.

In the instant case, the ALJ determined Plaintiff's diabetes mellitus did not

meet the criteria under § 9.08 (R. 21), as Plaintiff did not have a diagnosis of diabetic

neuropathy. (R. 16). The record establishes that Dr. Persia diagnosed Plaintiff with

diabetes (R. 218, 221, 229, 235, 238, 244), but that Plaintiff's diabetes was well

controlled (R. 229), and was stabilized with diet. (R. 238). No evidence in the record

serves to support that Plaintiff's diabetes mellitus otherwise resulted in "[n]europathy

demonstrated by significant disorganization of function in two extremities resulting in

substantial disturbance of gross or dexterous movements" as required under § 9.08A,

or "[a]cidosis occurring at least on the average of once every two months" as required

under § 9.08B, or that Plaintiff suffered "retinitis proliferans"[5] as required under § 9.08C.

Substantial evidence thus establishes Plaintiff is not disabled under § 9.08.

**Obesity**

In addition to determining whether Plaintiff's diabetes mellitus and status post carbon monoxide poisoning meets or equals the criteria under any listed impairment, the  ALJ must also consider any additional and cumulative effects of Plaintiff's obesity when determining whether Plaintiff has a listing level impairment or a combination of impairments that medically equals the severity of a listed impairment. Social Security Ruling ("SSR") 02-1p, 2000 WL 628049 at *5 (S.S.A. Sept. 12, 2002). Where the record contains evidence of limiting effects from a claimant's obesity, the ALJ must consider the impact of Plaintiff's obesity together with the Plaintiff's related impairments. *Sotack v. Astrue*, 2009 WL 3734869, at *5 (W.D.N.Y. Nov. 4, 2009)(ALJ is required to consider the impact of Plaintiff's obesity together with Plaintiff's related impairments when record contains evidence of Plaintiff's obesity and limiting effects). Conversely, the ALJ's obligation to discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the claimant's ability to perform work related activities. *Rockwood v. Astrue*, 614 F.Supp.2d 252, 276 (N.D.N.Y. 2009) (citing *Day v. Commissioner of Social Sec.*, 2008 WL 2331401, at * 5 (N.D.N.Y. June 3, 3008)(no obligation for ALJ to discuss obesity where examining physicians failed to discuss Plaintiff's obesity as a contributing factor to

---

[5]Retinitis proliferans is severe retinal bleeding and damage caused by diabetes.

Plaintiff's impairments)).

Here, the record establishes that Plaintiff is obese (R. 218, 221, 229, 235, 238, 244), but is otherwise devoid of any evidence that Plaintiff's treating or examining sources considered Plaintiff's obesity a significant factor relative to Plaintiff's ability to perform basic work activities. Additionally, the ALJ directed consideration to Plaintiff's obesity as a contributing and complicating factor of Plaintiff's severe impairments (R. 17), and as such, the ALJ properly considered any adverse effects of Plaintiff's obesity based on evidence in the record.

The ALJ next considered whether Plaintiff, despite suffering from status post carbon monoxide poisoning, obesity, and diabetes mellitus which neither met nor equaled any listed impairment, nevertheless retained the residual functional capacity to perform a full range of medium work. (R. 17).

## E.   "Residual Functional Capacity" to Perform Past Work

The fourth inquiry in the five-step analysis is whether the applicant has the "residual functional capacity" to perform past relevant work. "Residual functional capacity" is defined as the most work a claimant can still do despite limitations from an impairment and/or its related symptoms. 20 C.F.R. § 416.945(a). If a claimant's residual functional capacity is insufficient to allow the performance of past relevant work, the ALJ must assess the claimant's ability to adjust to any other work. 20 C.F.R. § 416.1560(3)(c). In the instant case, the ALJ found that Plaintiff has the residual functional capacity to perform a full range of medium work. (R. 17). The ALJ further found that Plaintiff's medically determinable impairments could reasonably cause Plaintiff's alleged symptoms, but that Plaintiff's statements pertaining to the intensity

14

and limiting effects of the symptoms were not credible (R. 18), and substantial evidence supports this finding. In particular, an internal medical examination completed by Dr. Toor on October 8, 2006, showed Plaintiff with no limitation to her gross and fine motor skills, and normal gait and station. (R. 266-68). Inasmuch as Plaintiff reported the limited ability to sit for 30 minutes at a time, pull or push, lift overhead, or walk for a prolonged distance (R. 35), Plaintiff reported activities of daily living that include shopping, laundry, going to restaurants and shops, and socializing with friends (R. 266), and testified that she dresses herself, takes care of her personal hygiene, takes care of her mother, prepares meals, does laundry, and takes out the trash. (R. 180-82). Plaintiff further testified that although she has pain every day, she does not take pain medication to relieve her symptoms. (R. 183).

Plaintiff disputes the ALJ's credibility finding alleging that the ALJ "never made a specific determination regarding whether [Plaintiff's] physical conditions, as exacerbated by her non-exertional impairments, could reasonably be expected to produce her pain in her back, generalized body pain, fatigue, headaches, difficulty concentrating, and pain in her hands and feet." Plaintiff's Memorandum at 6. The administrative record, however, establishes the ALJ considered various factors in determining Plaintiff's credibility that included the location, duration, frequency and intensity of Plaintiff's pain and other symptoms, factors that aggravate Plaintiff's pain and other symptoms, and any measures Plaintiff uses to relieve her pain or other symptoms, and determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 18). In particular, the ALJ determined Plaintiff's carbon monoxide poisoning causes Plaintiff to experience

15

headaches, weakness, tiredness, and generalized body pain, and Plaintiff's diabetes

mellitus causes numbness and tingling in Plaintiff's hands and feet, but that Plaintiff

does not take medication for any of these impairment related symptoms. (R. 19). As

such, the court finds the record establishes that the ALJ considered whether Plaintiff

has a medically determinable impairment which could reasonably be expected to

produce the pain or symptoms alleged as required under 20 C.F.R. § 404.1529. *Hogan*

*v. Astru*e, 491 F.Supp.2d 347, 353 (W.D.N.Y. 2007) (symptom related functional

limitations and restrictions consistent with medical and other evidence will be taken into

credibility assessment).

**F.     Suitable Alternative Employment in the National Economy**

The ALJ next determined Plaintiff was able to perform her past relevant work as

an assembler (R. 20), and considered whether Plaintiff would be qualified or suitable for

any position within the national economy. The Second Circuit requires that "all

complaints . . . must be considered together in determining . . . work capacity."

*DeLeon,* 734 F.2d at 937. Once an ALJ determines that a plaintiff's impairments

prevent a return to previous work, the burden shifts to the Commissioner to prove

substantial gainful work exists and that the plaintiff is able to perform in light of the

plaintiff's physical capabilities, age, education, experience, and training. *Parker v.*

*Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

It is improper to determine a claimant's residual work capacity based solely upon

an evaluation of the severity of the claimant's individual complaints. *Gold v. Secretary of*

*Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972). To make such a

determination, the Commissioner must first show that the applicant's impairment or

impairments are such that they permit certain basic work activities essential for other

employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981).

Specifically, the Commissioner must demonstrate by substantial evidence the

applicant's "residual functional capacity" with regard to the applicant's strength and

"exertional capabilities." *Id*. at 294.

An individual's exertional capability refers to the performance of "sedentary,"

"light," "medium," "heavy," and "very heavy" work.[6] *Decker*, 647 F.2d at 294. In addition,

the Commissioner must prove that the claimant's skills are transferrable to the new

employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[7] *Id*. at

294. This element is particularly important in determining the second prong of the test,

whether suitable employment exists in the national economy. *Id.* at 296. In this case,

the ALJ properly determined, based on the medical evidence in the record and the

Plaintiff's testimony describing her limitations, that Plaintiff could return to her past work

---

[6] "Medium work" is defined as jobs that require: "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §404.1567(c).

[7] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled".  *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."
20 C.F.R. §404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. §404.1568(b).

as an assembler as it required no greater exertion than "medium" work. (R. 19, 217-19).

Because Plaintiff was able to perform medium work she was able to perform light and

sedentary work such that no vocational expert testimony was required. 20 C.F.R. §

404.1567(c) ("If someone can do medium work, we determine that he or she can also

do sedentary and light work."). Inasmuch as Plaintiff contends her impairments restrict

her ability to work full-time as an assembler, Plaintiff's Memorandum at 13, none of

Plaintiff's examining or treating physician's have made a determination that Plaintiff was

unable to work and no evidence supports Plaintiff is unable to work on a regular and

continuing basis eight hours a day, five days a week.

"Where the findings of fact made with respect to a particular individual's

vocational factors and residual functional capacity coincide with all of the criteria of a

particular rule, the rule directs a conclusion as to whether the individual is or is not

disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200(a). At the time of the ALJ's

disability determination, Plaintiff was 54 years old, had a high school education, and

previously performed unskilled work. Under the grids, Plaintiff, classified as an

individual closely approaching advanced age, with unskilled previous work experience,

a high school education, and capable of performing medium work (or light work), is

classified as not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § Table No. 3, § 203.06.

Accordingly, the ALJ's determination that Plaintiff is not disabled as of the alleged

disability onset date of May 15, 2008 is supported by substantial evidence in the record.

## CONCLUSION

Based on the foregoing, Defendant's motion for judgment on the pleadings

should be GRANTED, Plaintiff's motion for judgment on the pleadings should be

DENIED, and the Clerk of the Court should be instructed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     July 19, 2012
           Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); Wesolek v. Canadair Limited, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      July 19, 2012
            Buffalo, New York